**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


**SCOTT HARRIS**,

                Plaintiff,

    **v.**

**MICHAEL ASTRUE**,
Commissioner of Social Security,

             Defendant.

**08cv018**
**ELECTRONICALLY FILED**


## MEMORANDUM OPINION

**October 29, 2008**

## I.   Introduction

Plaintiff, Scott Harris, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for  Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment on the record developed at the administrative proceedings.  After careful consideration of the Administrative Law Judge's ("ALJ") Decision, the memoranda of the parties, and the entire record, the Court will grant the Commissioner's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

## II.   Procedural History

On June 17, 2005, Plaintiff applied for DIB alleging disability.  Plaintiff separately

applied for SSI on May 20, 2005. In both applications, Plaintiff alleged disability beginning January 3, 2001, due to a back injury and sleep apnea. For the purposes of his DIB claim, Plaintiff's date last insured was December 31, 2005, meaning that he had to establish he was disabled on or before that date in order to be entitled to a period of disability and DIB. R. 53. After his initial claim was denied on October 18, 2005, Plaintiff timely requested a hearing on December 9, 2005. The hearing was held before ALJ Donald McDougall on March 7, 2007, at which Plaintiff, represented by counsel, testified, as did a vocational expert (VE).

On August 8, 2007, the ALJ denied Plaintiff's claim, finding that Plaintiff is not disabled. The ALJ also found that Plaintiff could perform work at the light level. After the denial, Plaintiff requested a review of the ALJ's decision. The Appeals Council confirmed the ALJ's decision on November 15, 2007, thus becoming the final decision of the Commissioner. Plaintiff then filed his complaint herein seeking judicial review of the Commissioner's decision.

## III.    Statement of the Case

The ALJ found that the record supports the finding of severe impairments which consisted of degenerative disc disease of the lumbar spine, obesity, and obstructive sleep apnea. Tr. 15.[1] The ALJ examined Plaintiff's medical record relating to his physical capabilities and discussed portions of Plaintiff's testimony where he described his daily activities. Tr. 19-20. The ALJ found that the objective evidence of record could not support Plaintiff's assertions relating to his physical infirmities nor could it support the findings in the medical questionnaire. Although testifying that he is unable to participate in physical activities with his children (such as throwing a ball around), treatment notes dated August 2005 show that Plaintiff injured his elbow

---

[1]Tr. refers to the administrative transcript.

while playing baseball with his daughter.  Tr. 19.  Furthermore, Plaintiff is the sole caretaker of his three young children and does much of the care and household upkeep.  *Id.*

The ALJ also found that there is no evidence of Plaintiff suffering from major depression and a personality disorder that existed prior to his date last insured or since the alleged onset date.  *Id.*  Furthermore, Plaintiff has met with various physicians over the years and he has never discussed depression with any of them nor has he been referred for specialized mental health treatment.  *Id.*  Due to Plaintiff's lack of a history with depression, the ALJ stated that it was unclear as to how Plaintiff was referred to a mental health facility, Goyette and Associates, on February 28, 2007.  Tr. 15.  The ALJ noted that the results from this evaluation showed that Plaintiff's neuropsychological examination was within normal limits.  Tr. 16.  The ALJ also observed that despite his application record remaining open thirty days after his hearing, Plaintiff did not submit any medical evidence showing that Plaintiff had sought mental health treatment.  *Id.*

The ALJ made the following specific findings:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2005.

2. Plaintiff has not engaged in substantial gainful activity since January 3, 2001, the alleged onset date.

3. Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, obstructive sleep apnea, and obesity.

4. There is no evidence to substantiate that Plaintiff suffers from major depression and a personality disorder.

5. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Supbart P, Appendix 1.

6.      Plaintiff is forty years old, thus qualifying as a "younger" individual.

7.      Plaintiff has at least a high school education and can communicate in English.

8.      Plaintiff has an unskilled work background and is unable to perform his past relevant work as a truck driver, furniture mover, and a pizza delivery person.

9.      Plaintiff's statements about his impairments and their impact on his ability to work are not entirely credible.

10.     Plaintiff has the residual functional capacity to engage in light work with additional limitations. He is limited to changing positions at least every one-half hour, occasional balancing, stopping, crouching, kneeling, and crawling, using a cane in one hand for any walking that is more than thirty yards, and missing up to one day of work per month. Plaintiff cannot engage in climbing ladders, ropes, scaffolds, stairs, or ramps.

11.     Considering Plaintiff's age, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

12.     Plaintiff has not been under a disability, as defined in the Social Security Act, from January 3, 2001 through the date of the ALJ's decision.

13.     Based on the application for a period of disability and Disability Insurance Benefits protectively filed on June 17, 2005, Plaintiff is not disabled.

14.     Based on the application for Supplemental Security Income protectively filed on May 20, 2005, Plaintiff is not disabled.

Tr. 15-22.


IV.     **Standards of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3). Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance

Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

<u>Substantial Evidence</u>

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings. See *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). See *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason*

*v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  See *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder.  *Rutherford*, 399 F.3d at 552.  In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ.  *Fargnoli v. Massarini*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ.  This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'" *Id.* at 87; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period."  *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982).  Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is

entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential

evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). See *Sullivan*, 493 U.S. at 525. The

Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*,

186 F.3d 422 (3d Cir.1999):

In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final step [five]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . . *Plummer*, 186 F.3d at 428 (certain citations omitted). See also *Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a

severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)).

If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled per se because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is equivalent to a Listed Impairment. See *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461

U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;

*Kangas*, 823 F.2d at 777.

Medical Opinion of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment

based on a continuing observation of the patient's condition over a prolonged period of time.'

*Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ."

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must

weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence

for no reason or for the wrong reason." *Id.* at 317, quoting *Plummer*, 186 F.3d at 429 (additional

citations omitted). The ALJ must consider all medical findings that support a treating

physician's assessment that a claimant is disabled, and can only reject a treating physician's

opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility

judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ must "explicitly" weigh all relevant, probative and

available evidence. . . . [and] must provide some explanation for a rejection of probative

evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly

accept some parts of the medical evidence and reject other parts, but she must consider all the

evidence and give some reason for discounting the evidence she rejects. *Adorno*, 40 F.3d at 48

(emphasis added; citations omitted). See also *Fargnoli*, 247 F.3d at 42-43 (although ALJ may

weigh conflicting medical and other evidence, he must give some indication of the evidence he

rejects and explain the reasons for discounting the evidence; where ALJ failed to mention

significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. Compare 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) with 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002). Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be

considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner, these Social Security Rulings require that, because an adjudicator is required to evaluate all evidence in the record that may bear on the determination or decision of disability, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must never be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is

"inconsistent with the other substantial evidence in [the] case record . . ."  20 C.F.R. § 404.1527 (d)(2).  Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors.  20 C.F.R. § 404.1527 (d)(1-6).

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert.  *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. See, e.g., *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), citing *Podedworny*, 745 F.2d at 218 and *Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).  See also *Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'")  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself."

*Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *Id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not necessarily require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), citing 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923).

13

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is equivalent to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and specifically explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli* , 247 F.3d at 40 n. 4, citing *Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful

activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. See *Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. See *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. E.g., *Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, relying on *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), relying on *Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the

ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. See 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. See *Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green*, 749 F.2d at 1070-71 (emphasis added), quoted in *Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must

present evidence to refute the claim.  See *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981)

(where claimant's testimony is reasonably supported by medical evidence, the finder of fact may

not discount the testimony without contrary medical evidence)."  *Williams v. Sullivan*, 970 F.3d

1178, 1184-85 (3d Cir. 1992) (emphasis added), cert. denied 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence,

both medical and non-medical, that support a claimant's subjective testimony about symptoms

and the ability to work and perform activities, and must specifically explain his or her reasons for

rejecting such supporting evidence.  Burnett v. Commissioner of Social Security, 220 F.3d 112,

119-20 (3d Cir. 2000).  Moreover, an ALJ may not substitute his or her evaluation of medical

records and documents for that of a treating physician; "an ALJ is not free to set his own

expertise against that of a physician who presents competent evidence" by independently

"reviewing and interpreting the laboratory reports . . . ."  *Ferguson v. Schweiker*, 765 F.2d 31, 37

(3d Cir. 1985).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based

upon a review of the medical record "are highly qualified physicians and psychologists who are

also experts in Social Security disability evaluation. Therefore, administrative law judges must

consider findings of State agency medical and psychological consultants or other program

physicians or psychologists as opinion evidence, except for the ultimate determination about

whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II

and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and

Psychological Consultants ("1. Findings of fact made by State agency medical and psychological

consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

## IV.     Discussion

The gravamen of Plaintiff's argument is that the ALJ's decision is not supported by substantial evidence.  Plaintiff asserts that the ALJ (a)  failed to accord controlling weight to the opinion of Plaintiff's treating source, Dr. Kuk S. Lee (hereinafter "Dr. Lee"), (b) erred as a matter of law by rejecting uncontradicted evidence that Plaintiff's mental health condition meets the *de minimis* threshold requirement as a severe impairment, and (c) relied on an inaccurate hypothetical question.

1.     <u>The ALJ correctly concluded that the treating source's opinion did not deserve controlling weight as it was not supported by substantial evidence</u>.

Where the opinion on the nature and severity of claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, a treating source's opinion is to be given "controlling weight".  *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). Furthermore, "when a treating source has seen a claimant long enough to have obtained a detailed longitudinal picture of the claimant's impairment(s)", greater weight should be accorded to the treating source's opinion.  56 F.R. 36932.

Plaintiff, in contending that the ALJ failed to give weight to Dr. Lee's medical opinions, characterizes the ALJ's reasoning as "factually incorrect, and/or legally insufficient".  Pl.'s Br. at

7.  Specifically, Plaintiff points to the ALJ's reliance on the conclusions of Dr. Saeed[2] who treated Plaintiff on three occasions in 2005, the ALJ's negative inference that Plaintiff engaged in "drug seeking behavior", and the ALJ stating that Dr. Lee's opinions were not based on a "long-time" treating relationship with Plaintiff.

In making his determinations, the ALJ reviewed Dr. Lee's treating notes regarding Plaintiff.  Dr. Lee treated Plaintiff from October 11, 2005 to February 22, 2007.  Tr. 220-233, 263-265.  During this time period, Plaintiff saw Dr. Lee on nine separate occasions.  In October 2005, Plaintiff presented to Dr. Lee, for the first time, with lower back pain and stiffness.  Tr. 232.  Dr. Lee observed that Plaintiff had an antalgic gait, mild scoliosis on the left side, an uneven pelvic level, tenderness across the sacroiliac joint, a normal lumbosacral lordotic curve and decreased range of the lumbar spine flexion.  *Id.*  Dr. Lee noted that Plaintiff had not been working for five years.  *Id.*  He recommended that Plaintiff engage in an exercise protocol to increase the movement in Plaintiff's pelvis and lower back and build up strength to prevent Plaintiff from suffering from chronic pain indefinitely.  Tr. 233.  Dr. Lee also renewed Plaintiff's prescriptions of Darvocet and Flexeril.  *Id.*

From January 2006 to September 2006, Plaintiff reported his pain level to be mostly around seven out of a scale of ten.  Tr. 227-231.  During this time period, Dr. Lee continued to recommend the exercise regime along with medication including Darvocet (eventually replaced with Vicodin and Vicodin ES, respectively), Feldene (eventually replaced with Voltaren), Soma, nerve blocks and injection treatment.  *Id.*  Physical examinations continued to show tenderness

---

[2]The Court notes that there is no mention of Dr. Saeed's full name in the record.  The only references to him are in the form of "AS" in addition to the aforementioned "Dr. Saeed."

and mild spasms in the lumbosacral regions. *Id*. With each visitation during this time period, Dr. Lee reported that Plaintiff continued to make slow progress. *Id*. On September 2006, Dr. Lee did report that Plaintiff had exhibited some regression with Plaintiff's clinical regimen (exercise along with medication and home remedies such as heating packs) but Plaintiff's status changed in November 2006 to that of "fair progress" with the same clinical regimen as previously prescribed. Tr. 227. Plaintiff continued to make fair progress with his clinical regimen until the last treatment date in the record, February 22, 2007 where he reported the pain he felt to be four out of a scale of ten. Tr. 265-267.

The ALJ also discussed the medical questionnaire which according to the record, was administered by Dr. Lee and pertained to the period between October 11, 2005 and October 31, 2006.[3] Tr. 223-226. Dr. Lee stated that Plaintiff was permanently disabled. *Id*. He opined that Plaintiff could only sit, stand and walk for less than two hours and had to walk with a cane in the right hand to stand or walk. *Id*. He also reported that Plaintiff could not bend, crawl or stoop although he could occasionally climb, balance, kneel or crouch. *Id*. Dr. Lee found that Plaintiff could occasionally lift up to ten pounds and frequently lift up to five pounds. *Id*.

The ALJ gave two reasons for not finding that Dr. Lee's opinion warranted controlling weight. The first reason was because Dr. Lee's findings did not correspond with the evidence of record as present in Plaintiff's progression with the recommended clinical regimen. Tr. 20. Plaintiff testified to efficacy of his regimen stating that "the pain pills . . . help" and "the pain

_____

[3]The notation made on the first page of the medical questionnaire with regard to the range of dates in which the questionnaire was conducted appears to indicate that the medical questionnaire spans the period between October 2005 and October 2006. Despite the unclear meaning of the notation on the medical questionnaire, there is no doubt that the questionnaire was completed on October 31, 2006. Tr. 221-226.

injections are wonderful." Tr. 227-230, 310. He also informed his primary care physician, Dr. Manie Juneja, in January 2006 of the "excellent relief" he was receiving from the prescribed Darvocet. Tr. 190.

The ALJ also found that Dr. Lee's conclusions were contradicted by Plaintiff's reported daily activities which included playing baseball with his daughter, an activity that eventually resulted in elbow pain as documented in Plaintiff's treatment notes on August 26, 2005. *Id.* The ALJ also noted that despite Plaintiff's testimony of having to lay on the floor for six hours a day, he, as the primary care giver for his three children, cooked, cleaned, shopped for groceries and clothes, took the children fishing, visited relatives, and went to restaurants on a monthly basis. Tr. 19-20, 320-323. Furthermore, Plaintiff testified during the hearing with the ALJ, to not being able to "go out and throw the ball around with the kids" since the emergence of his back injury. Tr. 321-322. This testimony runs contrary to record which shows his elbow pain resulting from the aforementioned elbow injury obtained while playing baseball with his daughter in August 2005. Tr. 19.

The second reason the ALJ gave for not according controlling weight to Dr. Lee's opinion was more ambiguous with the ALJ noting that Plaintiff's actions suggested "drug seeking behavior," and reasoning that since "[t]he claimant started seeing Dr. Lee in order to get narcotics more than one year ago . . . Dr. Lee is [therefore] a 'treating physician' but not a 'long-time' treating physician." Tr. 20. An examination of the record and Plaintiff's testimony during the hearing soon resolves this ambiguity.

The ALJ noted that Plaintiff had sought treatment on April 6, 2005 where he made "multiple complaints including chronic back pain, for which he was looking for narcotic pain

medications." Although the ALJ attributes the resulting treating notes for the April 2005 visitation to Dr. Juneja, the record establishes that it was Dr. Saeed that Plaintiff saw on this particular day and the treating notes were authored by Dr. Saeed. Tr. 160, 192. Dr. Saeed noted that Plaintiff had seen "multiple doctors" in the last two years and impressed upon Plaintiff, the importance of providing his previous medical records before Dr. Saeed could prescribe narcotic medications. Tr. 192. Dr. Saeed prescribed Naprosyn for his pain and advised him to apply moist heat to his lower back. *Id.*

Plaintiff saw Dr. Saeed again on May 2, 2005 and provided some of his medical records. Tr. 159, 188. Dr. Saeed observed that an x-ray of Plaintiff's lumbosacral spine in January 2004 revealed mild degenerative disc disease at the L5, S1. *Id.* There was also a mild disc space narrowing at the L4, L5 with a small diffuse bulge, a condition that remained unchanged since a prior MRI conducted in 2001. *Id.*

Dr. Saeed stated that Plaintiff's prior medical records did not show why he was in so much pain or why he could not work for the past five years. *Id.* Dr. Saeed also noted Plaintiff was once again asking for Darvocet, of which he prescribed a month's supply with no refills. *Id.* Plaintiff again saw Dr. Saeed on June 1, 2005 and although he was primarily there for a complaint of a dental abscess, Plaintiff once again made a request for more Darvocet. Tr. 158. Dr. Saeed stated that Plaintiff's x-ray of his lumbosacral spine on May 10, 2005 was unremarkable and he informed Plaintiff that he was not going to prescribe any more Darvocet as his records did not support a physical cause of the chronic pain of which Plaintiff complained. *Id.*

Despite Plaintiff's characterization of the ALJ's findings, the record shows that the ALJ

examined Dr. Saeed's treating notes and Plaintiff's testimony and viewed them as another piece of evidence in the record that cast doubt on the accuracy of the medical questionnaire and Plaintiff's credibility. Tr. 19. Indeed, Plaintiff testified during the hearing that "the pain pills . . . help because [he] went a long time with not enough pain pills." Tr. 310. Plaintiff stated that he stopped seeing his first doctor, Dr. May Flores (hereinafter "Flores"), because "she wouldn't prescribe anything [and] she had a sign in her office that said they don't prescribe any narcotics." *Id*. Plaintiff also saw Dr. Flores' husband who eventually prescribed Darvocet. Tr. 311. Plaintiff saw Dr. Flores for about one or two months before going elsewhere. *Id*. Thus, the ALJ in reviewing the Dr. Lee's treating notes, his medical questionnaire, Plaintiff's medical record and testimony, concluded Dr. Lee's opinion was not supported by the evidence of record. Therefore, the Court finds that there was substantial evidence in support of the ALJ's conclusion that Dr. Lee's opinion did not warrant significant weight.

2. The ALJ correctly concluded that Plaintiff's mental health condition did not meet the *de minimis* threshold requirement as a severe impairment.

Plaintiff argues that the ALJ erred as a matter of law by rejecting uncontradicted evidence that Plaintiff's mental health condition meets the *de minimis* threshold requirement as a severe impairment. The ALJ concluded that there was no evidence in the record establishing that Plaintiff suffers from major depression. Tr. 15. Plaintiff contends that Dr. Juneja "first diagnosed [him] with depression in 2006" and "concluded that [he] was also suffering from depression" in April 26, 2006. Pl.'s Br. at 23. The Court finds that Plaintiff's characterization of Dr. Juneja's finding is wholly baseless.

There are two instances in the record in which Dr. Juneja mentions depression in relation

to Plaintiff's status and both instances refer to Plaintiff's visitation on April 26, 2006. Tr. 189-190. Plaintiff informed Dr. Juneja during this visitation that he was feeling let down, sleeping heavily, lacking pleasure in doing things, and that he would want to see a counselor; this is the only reference to Plaintiff's depression in the record as related to his treatment with Dr. Juneja. Nowhere in the record is there evidence that Dr. Juneja "diagnosed" Plaintiff with depression let alone severe depression, or that Plaintiff requested to be referred to a counselor for treatment or that Dr. Juneja did refer him to a counselor.

Plaintiff also contends he was diagnosed with depression by Dr. Charles H. Goyette (hereinafter "Goyette") on March 6, 2007. Tr. 271. Plaintiff was referred to Dr. Goyette by the Fayette County Office of Assistance where he sought assistance in obtaining vocational training. Tr. 266-271. Dr. Goyette found that Plaintiff's interpersonal orientation is "almost completely absent". Tr. 268. He concluded that Plaintiff would not be able to maintain any form of employment due to depression and a personality disability and gave a final recommendation that Plaintiff be awarded federal disability benefits. Tr. 271.

The Court finds that the ALJ was correct in rejecting Dr. Goyette's opinion that Plaintiff was disabled and should be awarded benefits. A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, citing *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that

you are disabled.") (internal citations omitted).

Furthermore, the ALJ found that there was no indication in the record that Plaintiff suffered from depression prior to the last date insured or since the alleged onset date of his disability. Tr. 15. As mentioned previously, the issue of depression only surfaced in the record with Plaintiff's visitation with Dr. Juneja in April 2006 and did not result in any diagnosis of depression or recommendation for counseling. Indeed, Dr. Goyette also found that Plaintiff's neuropsychological examination fell within normal limits and his neurocognitive functioning (which includes assessment of motor functions, tactile functions, receptive and expressive speech, writing, reading, memory, and intellectual processes amongst others) fell below the critical level and was essentially intact. Tr. 269. The ALJ noted that despite Dr. Goyette's recommendation in March 2007 that Plaintiff be "immediately referred to [the] Fayette County Mental Health . . . for counseling" and the record being held open for thirty days after the hearing, Plaintiff did not submit any records indicating that he had sought mental health treatment before or after the ALJ's evaluation. Thus, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not meet the requisite threshold for a severe mental impairment.

      3.     <u>The hypothetical question posed by the ALJ to the vocational expert was accurate</u>.

Plaintiff also raised the argument that as the ALJ erred in not according significant weight to Dr. Lee's opinions and in determining that Plaintiff did not suffer from a severe mental impairment, the hypothetical question posed to the vocational expert was, consequently, inaccurate. As the Court has already addressed the factual bases underlying this argument, and found that Plaintiff's assertions were not supported by the evidence of record, the Court need not,

and will not address this contention.  The hypothetical question was accurate.

**V.**      **Conclusion**

The Court has reviewed the ALJ's findings of fact and decision, and determines that his finding that Plaintiff was not disabled under the Social Security Act is supported by substantial evidence.  Accordingly, the Court will grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's and enter judgment in favor of the Commissioner.


An appropriate order will follow.


  /s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All counsel of record listed on ECF